(C. D. 176)

JOHN M. DYER *v.* UNITED STATES

United States Customs Court, Third Division

(Decided June 8, 1939)

Lawrence & Tuttle (*Frank L. Lawrence* of counsel) for the plaintiff.
*Webster J. Oliver*, Assistant Attorney General (*John J. McDermott*, special attorney), for the defendant.

Evans, Judge: This is an action against the United States in which the plaintiff seeks to recover money claimed to have been illegally collected as customs duties upon an importation of merchandise from China imported into the port of Honolulu, Hawaii. The only question involved is the rate at which the currency of the invoice should be converted into United States dollars. The merchandise was invoiced in Mexican dollars and was entered in the same currency. The appraiser accepted the invoiced and entered values in his appraisement. The collector in converting the currency used the date of the certification of the consular invoice, viz, October 23, 1935, in conformity with article 824 (e) (5) of the Customs Regulations of 1931. The value of the Mexican dollar as estimated by the Director of the Mint and proclaimed by the Secretary of the Treasury under authority of section 522 of the Tariff Act of 1930, was $0.526. (See T. D. 47878.) This was the value used by the collector in his conversion. His action was taken under authority of said section 522, which provides that the Director of the Mint shall make a quarterly estimate of the value of foreign coin, which value shall be taken for purposes of conversion, except when it varies 5 per centum or more from "a value measured by the buying rate in the New York market at noon on the day of exportation," in which case conversion shall be made at a value measured by such buying rate.

The importer, the plaintiff herein, claims that the collector erred in adopting the quarterly estimated value of the Mexican dollar; that he should have used the actual amount paid by the importer for his merchandise, which amount, he alleges, is represented by the value of the Tientsin yuan dollar on the date of certification of the invoice, October 23, 1935, or $0.345416 (T. D. 47941). On an amendment to his protest plaintiff makes the claim that "allowance should have been made for a clerical error in the use of the term 'Mex.' in the invoice, in reference to currency." As no proof was offered in support of this claim it is hereby overruled.

Section 522, *supra*, is in the following language:

SEC. 522. CONVERSION OF CURRENCY.

(a) Value of Foreign Coin Proclaimed by Secretary of Treasury.— Section 25 of the Act of August 27, 1894, entitled "An Act to reduce taxation, to provide revenue for the Government, and for other purposes," as amended, is reenacted without change as follows:

Sec. 25. That the value of foreign coin as expressed in the money of account of the United States shall be that of the pure metal of such coin of standard value; and the values of the standard coins in circulation of the various nations of the world shall be estimated quarterly by the Director of the Mint and be proclaimed by the Secretary of the Treasury quarterly on the 1st day of January, April, July, and October in each year.

(b) Proclaimed Value Basis of Conversion.—For the purpose of the assessment and collection of duties upon merchandise imported into the United

States on or after the day of the enactment of this Act, wherever it is necessary to convert foreign currency into currency of the United States, such conversion, except as provided in subdivision (c), shall be made at the values proclaimed by the Secretary of the Treasury under the provisions of section 25 of such Act of August 27, 1894, as amended, for the quarter in which the merchandise was exported.

(c) MARKET RATE WHEN NO PROCLAMATION.—If no such value has been proclaimed, or if the value so proclaimed varies by 5 per centum or more from a value measured by the buying rate in the New York market at noon on the day of exportation, conversion shall be made at a value measured by such buying rate. If the date of exportation falls upon a Sunday or holiday, then the buying rate at noon on the last preceding business day shall be used. For the purposes of this subdivision such buying rate shall be the buying rate for cable transfers payable in the foreign currency so to be converted; and shall be determined by the Federal Reserve Bank of New York and certified daily to the Secretary of the Treasury, who shall make it public at such times and to such extent as he deems necessary. In ascertaining such buying rate such Federal reserve bank may in its discretion (1) take into consideration the last ascertainable transactions and quotations, whether direct or through exchange of other currencies, and (2) if there is no market buying rate for such cable transfers, calculate such rate from actual transactions and quotations in demand or time bills of exchange.

The plaintiff introduced the testimony of the chief liquidator in the office of the collector of customs at the port of Honolulu, who described the method used in converting the currency in the case at bar, as follows:

Q. Please state what that method was.—A. The merchandise arrived by mail on November 6, 1935. The date of certification of the consular invoice, October 23, 1935, was considered as the date of exportation in accordance with article 824 (e) (5) of the Customs Regulations of 1931. The merchandise was invoiced, entered, and appraised in Chinese Mexican dollars. The value of the Chinese Mexican dollar proclaimed by the Secretary of the Treasury under section 522 (b) of the Tariff Act of 1930, as published in T. D. 47878, for the quarter beginning October 1, 1935, was $0.526.

Q. Will you give the T. D. number again?—A. T. D. 47878. Which value was used in the conversion of the Mexican dollars into United States currency in the liquidation of the entry. In its letter dated October 11, 1933, published as T. D. 46669, the Bureau of Customs advised collectors of customs that the daily exchange rates would no longer be furnished for the Mexican dollar. However, the Bureau stated that since it was its understanding that the Mexican dollar was exchangeable dollar for dollar with the new yuan dollar, the exchange rate for the yuan dollar at Chefoo, Hankow, Shanghai, or Tientsin, according [to] the place where the invoice was made, should be accepted as the exchange rates for the Mexican dollar for purposes of comparison with the proclaimed rate for the Mexican dollar. In T. D. 47935, the Customs Court ruled that the Treasury Department's instructions contained in T. D. 46669 were in conflict with the provisions of section 522 of the Tariff Act of 1930 and that where no buying rate exists for a currency on the date of exportation, the proclaimed value thereof for the quarter during which exportation took place should govern. The court held that the statute does not authorize a comparison of the selling value and the buying rate in the New York market of some other dollar with the proclaimed rate of the Mexican dollar. Therefore, the value as estimated by the Director of the Mint and proclaimed by the Secretary of the Treasury under section 522 of the Tariff Act of 1930, for the quarter beginning October 1, 1935, was used in the liquidation of this entry.

In making the conversion as above set forth the collector acted in accordance with the ruling of this court as found in the case of *A. J. Bracher Co.* v. *United States*, T. D. 47935, 68 Treas. Dec. 404. Plaintiff contends that where the Secretary of the Treasury has failed to publish daily buying rates for the Mexican dollar, the invoice currency should be converted into United States dollars according to its actual value.

Counsel for the plaintiff has cited in his brief in support of his position the case of *Waldorf-Astoria Segar Co.* v. *United States*, T. D. 26515, G. A. 6083. In that case the merchandise was imported from Cuba and the invoices made out in "Spanish gold." That unit of value did not appear in any of the quarterly estimates of the value of foreign coins made by the Director of the Mint and proclaimed by the Secretary of the Treasury under section 25 of the Tariff Act of 1894, then in effect. The Board of United States General Appraisers (now the United States Customs Court) restored the case to the calendar in order that the plaintiff might furnish testimony "relative to the exact amount of money that was paid to the sellers of the merchandise in full settlement of the invoices in question and the kind of money in which it was paid." However, the opinion stated that it was "generally conceded that the market price of the merchandise in question in these cases is the actual amount paid." In the case before us we have no such concession. We therefore think that case is distinguishable from the case at bar and do not consider it an authority for permitting testimony as to the value of certain recognized foreign currency.

If, as claimed by the plaintiff in the instant case, the Mexican dollar in China is equivalent to the yuan dollar, the importer's remedy would seem to the court to be to have the seller make out the invoices in yuan dollars the value of which currency is proclaimed by the Secretary of the Treasury regularly under the provisions of section 522 of the Tariff Act of 1930. While this conclusion may work a hardship on the importer we have no equity jurisdiction but must act in conformity with the statute. Furthermore, it would seem that even were this court to find the exchange value based upon evidence produced by the importer of the Mexican dollar in China, the collector would still be bound by the statute and the regulations in that he would be obliged to convert the Mexican dollars of the invoice at the only rate proclaimed by the Secretary. This court sitting in classification cases could not find a value for the merchandise, nor do we think we should find a value for currency, the statute having provided in said section 522 for a method of ascertaining and publishing such value. The power of this court is limited by the statute, and nowhere in the statute do we find authority to compel the Secretary of the Treasury to proclaim a rate of conversion. As stated above, importer's

remedy would seem to be to instruct his seller to make out his invoices in yuan dollars rather than Mexican dollars. If his contention is well founded, viz, that the yuan dollar and the Mexican dollar in China are interchangeable, this would seem to be an easy solution as to future importations. As to the present situation, we are without authority to remedy it and hold that the collector acted in conformity with the law in following the decision in the case of *A. J. Bracher Co.* v. *United States, supra,* and converting the currency at the proclaimed value thereof.

For the foregoing reasons plaintiff's claims are overruled. Judgment for defendant. It is so ordered.